May it please the court, my name is Rachel Kornblatt and I represent Jimmy Torres and I'd like to reserve two minutes for a rebuttal. This appeal presents two main issues, suppression and sentencing. Within suppression, there are three sub-issues, whether the Las Vegas Metropolitan Police Department or Metro properly towed Mr. Torres' vehicle, whether Metro exceeded the bounds of an inventory search by opening up a latched, closed air filter box, which is part of the engine's mechanics, and three, whether the district court erred in its order affirming the magistrate's report and recommendation granting, recommending, granting dismissal, excuse me, dismissing my motion to suppress. With respect to the suppression issue, I'm going to focus my attention today on the search itself and then turn to sentencing, unless the court has a question about the tow or the order. For the search, Metro exceeded the bounds of an inventory search by opening up the latched, closed air filter box. The search contradicts Supreme Court and other case law in this circuit that makes clear that an inventory search cannot be a ruse for a general rummaging around to find evidence of a crime. But what if it's both? I'd say it's pretty clear that they thought this guy was a bad guy and that they were kind of thinking maybe they'd find something like this, and then they did. But what if they also have a plausible justification based upon, say, public safety? If there are two bona fide reasons, if there's a vestigatory motive and also an inventory, if there's another bona fide reason, then the search is okay. And is bona fide reason under inventory search that there may be something here that would be dangerous if discovered by someone, say, in the tow lot or wherever? I mean, I'm trying to figure out what the boundaries are of this purpose, which is a legitimate purpose. Correct. I don't believe there are two bona fide reasons for this search. I believe there is only one reason, which was investigatory. However, for inventory searches, a search can be upheld to protect the police from danger. And under Supreme Court precedent, it's not the public generally. It's only the police from danger. And if we were to expand that here to protect anyone, I believe the exception would swallow the rule. Because if you can go into that air filter box to look for drugs or guns for a generalized notion for safety, then there's really no purpose for an inventory search. That's basically a warrantless search without probable cause. But isn't it ‑‑ I mean, there is a concern if there's somewhere in, you know, the cars are all impounded in a lot, and if the car contains a gun, couldn't anybody just get a hold of it and use it against the police or anybody who's caretaking the lot? That would be true for basically anything, Your Honor. And I believe that if we allow a search in this part of the vehicle for that purpose, again, it's not ‑‑ we're creating a new exception. Explain to me exactly where this air filter search ‑‑ I mean, you can definitely open the front hood, right? Correct. You can open the front hood. You can see the engine. Correct. Okay. So where is this air filter exactly? It was ‑‑ and there's a picture of it in the record already opened, but there's a hood to the air filter that's a dark, plastic, nontransparent material, and it's connected to a base, and there's latches around the side of it. So what the officer did was undid the top of the box from the bottom, undoing the latches, and when he did that, the air filter's inside and the gun was on top of it. And the ‑‑ but the policy that the ‑‑ it's important that the police department had a policy, and they had a policy, right? And the policy allowed them to look under the hood. The policy allows them to open the hood and check to see whether there's an engine and a battery, which is on the standard impound report form. The policy does not allow them to undo parts of the engine. Well, but undoing parts of the engine, and I understand that there has to be some limits, but they didn't take a crowbar to take off and unscrew something. This was the air filter, which I think ‑‑ I thought there was some testimony that it's considered part of the engine, or I don't know, maybe it's ‑‑ but it's right there next to the engine. Is that right? It's part of the engine's mechanics, Your Honor. And the radiator, too. You could look at the radiator as well. I mean, you could unscrew and look in many parts of the car, the oil tank, the gas tank, the radiator, the fuse box, basically nearly every single car component, for the most part, contains another item. And when you refer to the policy, what the policy provides is that any containers found within a vehicle may be searched, and the containers and their contents must be inventoried on the standard impound report form. So this presents a really interesting question. If you can do that, and they looked at the air filter, why isn't that allowable? It's not allowable because it's not pursuant to the policy. Because they can look in the radiator. They can open up the hood and visually inspect. But they can't open the radiator? That's correct, Your Honor. That's my position. Well, that's your position. What's your authority? Well, my authority is, well, there is ‑‑ Because the authority out there says you can look in any container. Well, one, I don't believe these are containers that are meant to be opened pursuant to that policy because if that was the case, then Metro, pursuant to every inventory search, would have to document the container, so the radiator, the air filter box, the oil tank, the gas tank, and Metro would have to inventory the contents of that container, the amount of oil, the amount of gas, the air filters. I'm with you in terms of what I think container means in the written policy. It probably means a box on the back seat, a cooler, a beer cooler on the back seat, that kind of a container. But what if we are ‑‑ what if the record shows us, and I think it does, that even though it may not be in the written policy, it is the uniform practice to do this. Is that sufficient for it being the policy? The policy may be wrong, but I'm trying to figure out how do we define policy here. No, Your Honor. I don't believe that would be sufficient. Because let's say even if it's not the policy that they go ahead and look in these parts of the car component, then that would also contradict Supreme Court anti‑circuit law that limits and inventory searches are okay so long as they follow a standardized police procedure that limits their discretion. I know, but my question is for it to be a standardized police procedure, does it have to be written down? It does not, Your Honor. So if their standard procedure is they always look in the air filter box, that sounds like it's their standard procedure, even if it's not written down. But the problem with that, Your Honor, in my position is that it would not limit their discretion. Then they would have full discretion to look in nearly every single car component. Well, but it depends then on their uniform practice. If their uniform practice is they're going to dismantle the gas tank, I guess that's their uniform practice. But I doubt that is their uniform practice. But those air filter boxes are very easy to open, and according to the record we've got here, is a fairly standard place for bad guys to hide things, guns, drugs, et cetera. And, Your Honor, that is why they went into that air filter box. But that, to me, is a warrantless search, and they would need probable cause, which they did not have here. It's not an inventory. Well, but then the question is if they think that there might be a gun there, is it a danger to allow a gun to be sitting there, or at least the possibility of a gun, to be sitting in the air filter box in the tow yard for two weeks, however long it is? It may be that people understand that if these are impounded cars, here's a good place to look for a free gun. Again, the danger is related to the police, not the public overall. There's no record here that a loaded firearm would create a danger to the police sitting in the air filter box with the way it was. And so you think that what they should have done is gotten a warrant if they had this other motive of thinking that, being suspicious that there might be a gun in the car. They should have gotten a warrant before they opened the air filter box. That's correct. And the officer testified at the hearing that he had no probable cause to believe that there would be any other type of contraband in the car. Yeah. I don't think he could have gotten a warrant, yeah. And, Your Honor, I see my time is running. Don't you want to address? I would love to address sentencing. Well, okay. So the main thing is you have an appellate waiver here. So how do we, I mean, how can we apply Johnson when there's an appellate waiver? This Court recognizes an exception to the appellate waiver when it's an illegal sentence, and that's in Flower and that's in Bibler. And both of those cases define an illegal sentence. The sentence either exceeds the statutory maximum for a penalty or. And did that happen here? No. Okay. Or. Or it violates the U.S. Constitution. And that's my position. The sentence violates the Constitution because of Johnson. Now, if we were to apply Johnson to the sentencing guideline here and look at the sentence actually done. So let's prepare the PSR with Johnson in mind. Would the sentence actually given have been an upward departure? It would be an extreme upward departure because his new guideline range, as the government briefed and I agree with, would be 33 to 41 months. Well, then, I'm looking at the first full paragraph on page 11 of the plea agreement, EOR 264. The language reads, however, the defendant does preserve the right to appeal. I'll wait until you get there. Are you with me? I am with you. Does preserve the right to appeal, A, any portion of the sentence that's an upward departure from the sentencing guideline range as determined by the Court. Well, if we were to determine that Johnson applies here, this looks like an upward departure. Now, maybe the Court should be read as the district court. But given Johnson and given that this is on appeal, it sounds like that's an error. So as properly determined by the Court or perhaps as determined by this Court, how am I supposed to read that? Your Honor, I think you can read it either way. We believe at the time, obviously, Johnson didn't exist. Mr. Torres's sentence was properly calculated. It's been since rendered unconstitutional due to Johnson. But since this is on appeal, we're not talking about retroactive effect in terms of what that would do in habeas. It's a live question and it's not settled until the appeal is finished. That's correct, Your Honor. Okay.  Thank you. Thank you, counsel. Thank you. Good morning. May it please the Court, I'm Elizabeth White for the United States. First, just to talk about the search. The airbox, as the officers testified, first of all, the officers who testified testified that as their practice, if the airbox is accessible, they look in it all the time. They open anything that opens, is what they said. They look inside the gas cap to see if there's something there. They open the sunroof if there's something there. If it opens, if it's a container that's accessible and can be opened, they open it. The officers testified. Are you arguing that the written policy that says container means the radiator? Yes. That's crazy. Oh, okay. Well, then, no. The written policy says that the officers are supposed to open all containers. I understand. And the container isn't the air filter or the radiator or the gas tank. I mean, that's not what they mean. Right. And I think the radiator and the gas tank may be different. The air filter is a box. Well, they're containers in the sense they all contain something. Right. I just don't think they're containers within the meaning of the written policy. Right. The air filter box is a container that opens up. I understand that. And contains things. And the officers testified that, in their experience, people put things in there. Yeah, you don't need that, given the concession you just got from the other side, that in order for it to be a police procedure, it doesn't need to be in writing. All you need is that it be the uniform procedure. Right. And the officers did testify. Both Officer Evans and Officer Donaldson testified that the standard practice, if the air filter box is accessible, they open it up every single time. And they both testified to that. I don't know that we need to – if you have any other questions about that. Well, yeah, I do have a question about this. I mean, it's clear that they're looking for – I mean, it's just obvious. They're looking for contraband. It's also possible that they're trying to protect themselves. Yes. But, frankly, I have trouble seeing why they need protection of themselves from this. I mean, they've got the guy in custody. So he's not about, while they're just kind of doing the search, he's not about to go reach into that air filter box, pull out the gun, and shoot them. Because they've got full control over him. Right. How is it necessary to protect them, as distinct from the general public, that they get that out of there? Because they're going to have custody over that car in the impound lot. Yes, they are. I assume the impound lot is going to be locked. I mean, how are the police endangered by having that sitting in a locked impound lot? Yeah. Well, the Supreme Court addressed that specific issue in Colorado v. Bertine, and this is at 373 footnote 5. They talked about the reasons that you can do an inventory search and that such knowledge of dangerous weapons in the car can be helpful to avert any danger to police or others, they say, that may have been posed by the property. And then in a footnote, they kind of take the dissent to task, because the dissent said, no, protecting the police is not a real issue here. And the majority says, but in doing that, the dissent overlooks the testimony of the officers who said that inventories are also conducted in order to check for any dangerous items such as explosives or weapons. So the Supreme Court in Bertine accepted that if there's, you know, if there's a risk that there's something dangerous, explosives or weapons in the car, it is a legitimate part of an inventory search to find that as a way, as a means of protecting the police from having that there. They didn't think there was a risk of an explosive. I mean, they. . . Right, and the Supreme Court said explosives or weapons. I know that's what the court said. Gosh, I can understand that today. But they didn't think that with this car. Right. So it seems as though they were really searching for a weapon, a firearm. Well, and what they said, the officers testified that they have found things in the air filter box. And. . . Yeah, that's why they're looking. They're hoping to find something now this time, too. Right, exactly. I mean, this is a place where people put things. Now, yes, more often than not, if you're going to put something in your air filter box, chances are it's something that you're trying to hide. So it's more likely contraband than not. But if there is a reason to believe that something, that personal property could be in this box, the fact that if there is personal property in the box, it's probably contraband, can't preclude you, can't preclude the officers from inventorying  I mean, if there was a. . . It seems to me as though that you're basically got the intellectual structure of a Wren stop, that is to say, if I've got any plausible excuse to stop the car, it doesn't matter that I'm stopping the car because I'm trying to get a bad guy about whom I have some suspicion. You're saying that if I got any plausible reason to connect this to, say, safety, it doesn't matter that really what I'm after is I'm trying to get this guy by finding contraband. Yeah. That's your position. Basically, and that's basically the position that this took, that this Court took in Bohe, that it doesn't matter if the officer has mixed motives. I mean, you're doing an inventory search. This is legitimate. What if it's not really a mixed motive at all? That is to say, the only thing he really cares about is getting this guy, and his sense of the danger is that it's trivial. I think that would be a different case, and I'm not, I'm not sure. I mean, I think that the, you know, what, what Wren says in the, in the stop context is that the subjective motivations of the officers are simply irrelevant. I mean, here what we have is an inventory that is... I think, I think you're basically arguing for that intellectual construct here. Perhaps, yes. When, when the police conduct would have been the same regardless of the officer's subjective state of mind, no purpose is served by attempting to tease out the officer's true motivation. And you just read that from... From Bohe, from this Court's decision in Bohe. Yeah. So what do we do with the fact that this is supposed to be an inventory search document, what's in the car, and he doesn't put on the report that he found the gun? Or does he put it on the report? I can't find it. They were doing the inventory. The form is on page 58 of the excerpt of record. Yeah, I'm looking at that. He has all the stuff, miscellaneous papers, antifreeze. But he doesn't put gun. I believe what the testimony was, they were doing this inventory search and obviously conducting it per Las Vegas Metro regulations. And as soon as they found the gun, they stopped and called the gun officer, you know, the gun, the firearms detective. But if they're doing an inventory search, aren't they supposed to put everything they find on this report? Yes. And I think that they were in the process of doing this. What evidence is there in the record of that? They don't list gun. No. But shouldn't they have listed gun if they were really doing an inventory search? If they had finished the inventory, the gun would have been listed along with all of the other things. And there have been cases from this Court that have, I think it was this Court, it might be the Eighth Circuit, I'm sorry, that said that the inventory. That the inventory is clearly a ruse when the officers don't even bother filling out a form. They don't even list any of the things. And here they were. Officer Evans testified that they were doing the inventory search. And as soon as they saw the gun, because they can't touch the gun, they call the firearms folks to come out and sort of take over that investigation. So they were doing this inventory search. They found this gun. And then things sort of changed a little bit. Yeah, they probably should have written it down. But, I mean, they're clearly, this isn't the case where they're just rummaging around and they're not even filling out an inventory form. I'm going to redirect the question just for a second. I just want to know why shouldn't Mr. Torres be entitled to the benefit of Johnson? Because in his plea agreement, he stipulated to the base offense level and the enhancements. The district court sentenced, imposed a sentence based on the agreement of the parties and the defendant waived his right to appeal in a valid operative plea agreement for which the government has upheld its end. And how about the language I read to your opposing counsel? I think the, I don't think that that language has ever been interpreted to mean anything other than the district court. But if it were. But we construe the language, if it's ambiguous, against the drafter. Right. So there's like an insurance contract. Yeah, yeah. And you guys are the insurance company. Sure. The problem with that is if that were the case, I mean, if the interpretation is that a defendant reserves the right to appeal any portion of a sentence that's an upward departure from the guideline range as determined by the court of appeals, that would nullify an appeal waiver. Because a defendant could always argue the district court calculated the guideline range incorrectly. The court of appeals should recalculate it differently, such that now the sentence I got is an upward departure. Every defendant who is challenging a guidelines calculation would be able to appeal to this court, if that's how you were going to. But this is a narrower business than every defendant and so on. The reason why it's wrong, now I'm putting an appellate waiver to one side. The reason why it's wrong is Johnson. Yes. Johnson is applicable to all cases on direct appeal. Yes. So this is a live case. Yes. We're not facing retroactive. So we know the decision by the court was wrong. Okay. Well. And we know that the court, if it were applying the proper law as a live case today, would follow Johnson. Yes. Yes. And so as determined by the court, that turns into a kind of a narrow situation rather than any time you sort of disagree with what the district court did. Well, I would just make two quick responses and I see that my time has run out, but if you don't mind. First of all, the defendant in the plea agreement, I mean, basically the argument here is that the guidelines was calculated incorrectly. And in terms of who made that error, it was the parties that made that error. The district court specifically said, and it's at the supplemental excerpt of record at page 7, I think. The court said, I am therefore going to impose sentence based on the guideline range stipulated to by the parties in the plea agreement. So if anyone made a mistake, and, you know, obviously in light of Johnson, the guideline range would be different. But what the district court was doing was accepting the parties' stipulation in their valid operative plea agreement. Now, also in the plea agreement, the defendant specifically waived the right to appeal the manner in which the court determined the sentence on the ground set forth in 18 U.S.C. 3742, which would otherwise allow the defendant to appeal a sentence imposed as a result of an incorrect application of the sentencing guidelines. And that's exactly what we have here. This was now in retrospect an incorrect application of the sentencing guidelines, and the defendant wants to appeal it. The defendant explicitly waived his right to appeal that. The government has fulfilled. I mean, if this were to go back, if this were to go back, there's still a binding operative plea agreement on the table. And so this court would have to excuse the defendant from the provision where they stipulate to the range and then presumably would have to excuse the government from its promise to recommend a guideline sentence because when we agreed to recommend a guideline sentence, we thought the range was 92 to 115. So I'm not sure how this court could excise a couple of provisions from a valid plea agreement. I mean, the government has done what it said it would do. It permitted him to ñ it gave consent to appeal the suppression issue, which was to ñ I have a question across the board of, you know, the Department of Justice, U.S. attorneys. Has there been any discussion about ñ you know, Johnson's a pretty significant case, right? Yes, it is. So is there some policy that, you know, any ñ all of these people, all these similarly situated people to Torres, you're going ñ the whole department is going to argue that the plea, the appellate waiver was valid and not give this whole group the benefit of Johnson? Is this a national policy or is this your policy? No. I wish. No, the national sort of the direction, and I think you've probably already seen this in some other pleadings, the government does believe that because of the decision in Johnson, the identically worded residual clause in the career offender guideline cannot be imposed, and so therefore it can't be imposed going forward. I've seen that. Yes, I've seen that in a lot of cases that the government has made that concession. But I ñ so there's something that troubles me about it seems to be, since this is a direct appeal, it seems to be unfair. Yes. Well, and that's ñ you know, and if there was ñ if it was on direct appeal and there hadn't been an appellate waiver, we've conceded ñ our office has conceded to a few of those already, so we would. So this hinges on the appellate waiver in your position. Yes. Yes. So let me ask you, because in his plea agreement, Mr. Torres reserved the right to seek review of the determination that he qualifies as an armed career criminal. Yes. Okay. So a sentencing enhancement based on the prior crimes of violence. Why isn't this sufficient to entitle him to challenge the crime of violence adjustment, especially in light of what you just said, that you agree that that applies to the crime ñ the violent crime adjustment that he received under 2K2.1? Well, I'll tell you ñ I mean, is it close enough that he ñ or sufficient enough that he reserved that right? No. And in fact, I think that that provision in the plea agreement really argues  that he had fully understood the ability to preserve appellate review of specific issues. He reserved his right to appeal the suppression issue. He reserved the right to appeal a determination that he qualified as an armed career criminal, but the court found that he didn't qualify as an armed career criminal. He didn't reserve the right to appeal a determination that he was a career offender, but the court also found that he was not a career offender. So that provisionó Well, the Supreme Court actually gave a good example. I can't think of the case, but it's cited in the briefs. You know, a defendant could appeal ñ could waive his right or could reserve his right to appeal plain errors, could reserve his right to appeal, you know, based on changes of law. It's a negotiation, and they, you know, they offer stuff and we offer stuff. We, you know, obviously under Rule 11, the defendant needed our consent to appeal the suppression issue, and so that was part of the negotiation. I think when you come back to the fairness of it, though, this was, you know, this defendant has 13 felony convictions, and it is true that the way the law is right now, not a single one of them qualifies after discounts and after Johnson, notwithstanding the conduct, which, you know, by any measure of common sense, these were ñ these were violent crimes, but the government understands the law is what it is and they don't qualify. We agree that we're going to follow the law and we think the defendant needs to follow the law as well. And are you saying this is plain error review? You just mentioned plain error. I think that if the defendant had reserved the right to appeal ñ no, it actually probably ñ well, yeah, if theyíd reserved ñ if heíd reserved his right to appeal a plain error at this stage of the game, you know, on appeal, the Johnson calculation, although, no, even ñ no, because even then he stipulated to the range. No, but you know what you're going to get after this? You're going to get reservations for changes in the law. You're going to get some ñ I imagine we're going to get requests. This is going to change the plea agreements if you stick to this position. Yeah, yeah. No, I imagine we're going to get requests for that, and, you know, and these are negotiated things, and we'll either agree to them or we won't, and we'll go to trial or, you know, the defendant could have pled straight up. You wouldn't have been able to appeal the suppression issue, but this was part of a negotiated plea, and the government has fully complied with its obligations under the plea. All right. And how ñ and one last question. I'm sorry to keep you over. And how much does the sentencing enhancement under the guideline that's now contrary to Johnson, how much does that kick up his sentence? A lot. A lot. It was ñ without the enhancement, it would be 33 to 41. With the stipulated range, it was 92 to 115. And the sentence he got was? 92. 92. And like I say, I mean, now ñ and this ñ I was just thinking about this. If this were to go back, I mean, this Court would have to somehow find a basis for excising the defendant's promise to stipulate to the base offense level of 24, and I think, you know, fairness would dictate that the government would have to be excused from its promise to recommend a guideline sentence because that was, you know ñ and I just ñ I don't see any basis for this Court doing that. Okay. All right. Thank you very much, counsel. And thank you. United States v. Torres is submitted. We'll take up United States v. Hill.
judges: Wardlaw, W. Fletcher, Murguia